UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHARON HUBBARD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-1514 (VLB) |
| TOTAL COMMUNICATIONS, INC., | : | |
|     Defendant. | : | May 18, 2010 |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR POST-JUDGMENT ATTORNEY'S FEES**

Before the Court is the Motion filed by the Plaintiff, Sharon Hubbard, for Attorney's Fees Incurred Post Judgment and on Appeal and For Costs, dated October 8, 2009 (the "Motion"). [Doc. No. 160]. The Defendant, Total Communications, Inc. ("Total"), opposes the Motion. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

As the parties are familiar with the factual and procedural background of this case and they are rifely recited in the briefs filed on this issue, they are not reiterated in detail here. It will suffice for purposes of this decision to state that on September 30, 2009, the Second Circuit Court of Appeals issued a Summary Order in which it affirmed the judgment of this Court in accordance with a jury verdict. On October 8, 2009, the Plaintiff filed the instant Motion and a Supporting Memorandum of Law.

1

[Doc. No.161]. On November 12, 2009, the Defendant filed a Memorandum in Opposition to the Motion, [Doc. No. 165], and the Plaintiff filed its Reply on November 10, 2009. [Doc. No. 167]. The Motion was accompanied by a document titled "Client Fees Listing" which are the actual billing records of Plaintiff's counsel Madsen, Prestley and Parenteau ("MP&P"), reflecting the service rendered, the person rendering the service, the date the service was rendered, the total amount of time spent each day rendering service, the person who rendered the service, the total amount of time spent by all persons, and the amount of time billed and unbilled time. [Doc No. 161, Exhibit 1]. It does not state the billing rate for each person. The Motion states the hourly rates sought as follow: $350 per hour for partners, $250 per hour for associate and $100 per hour for paralegal assistance. These are the same hourly rates MP&P charged the Plaintiff in 2008, although MP&P increased its hourly rates in 2009. The "Client Fees Listing" states that certain time spent was not billed and that no amount was billed to the Plaintiff.

The Defendant does not contest the Plaintiff's right to attorney's fees, but rather, objects to the amount of fees sought on specific bases. It objects on the ground that the fees sought are unreasonable in that they would amount to a windfall because MP&P agreed to represent the Plaintiff on a contingent fee basis. The Court is not convinced that MP&P had a contingency fee arrangement with the Plaintiff. The Defendant states, "[I]n support of the instant Motion, the Plaintiff has submitted a 'Client Fees Listing' document, purporting to represent the number of hours spent on particular tasks associated with this Case. As is plainly clear from this three-page

document Madsen, Prestley & Parenteau, LLC did not bill the Plaintiff for the work they performed on the case. The 'Amount' column has no dollar amount corresponding to any of the tasks. The 'Summary by Working Lawyer' and 'Summary by Responsible Lawyer' both of which appear on the third page of the document, also indicate that nothing was billed to the Plaintiff." [Doc. No. 167, P.4]. The Defendant correctly notes that there was no amount billed to the client from which it would not be unreasonable to infer that MP&P was engaged to represent the Plaintiff on a contingency fee basis; however, the Defendant fails to attach as an exhibit the available direct evidence of a contingency fee arrangement, namely MP&P's representation letter agreement with the Plaintiff, which it was entitled to obtain through discovery and apparently did not seek. The Defendant correctly notes that the "Client Fees Listing" states that zero dollars were billed to the Plaintiff. But the Court can conceive of at least one other plausible reason why MP&P has not billed the client for the legal services it rendered. That reason is that the Defendant would be responsible for paying the Plaintiff's legal fees if MP&P successfully defended the appeal. Finally, the defendant objects to certain fees sought as excessive for specified reasons discussed below.

## II. DISCUSSION

In actions brought pursuant to Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. 2000e-5(k). "In determining reasonable attorney's fees, a district court must calculate a lodestar

figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006). The Second Circuit has repeatedly stressed the need to view such awards with an "eye to moderation" so as "to avoid either the reality or the appearance of awarding 'windfall fees.'" Beazer v. New York City Transit Authority, 558 F.2d 97, 101 (2d Cir. 1977), rev'd on other grounds, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

The United States Supreme Court has held that in determining what is reasonable, a court must consider the 12 factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Blanchard v. Bergeron, 489 U.S. 87, 91-92 (1989). Those factors are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Blanchard, 489 U.S. at 91 n.5 (citing Johnson, 488 F.2d at 717-19).

The size of an award of attorney's fees lies largely within the discretion of the district court. However, the Second Circuit has established a two-step process for the method of exercising that discretion in calculating awards. See Cohen v. West Haven

Board of Police Commissioners, 638 F.2d 496, 505 (2nd Cir. 1981). The first step is a quantitative analysis in which the court establishes a "lodestar" or "presumptively reasonable" figure, obtained "by multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area." Id. Next, the court conducts a qualitative analysis in which it "may adjust the lodestar figure upward or downward to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation. Under these procedures, a different rate of compensation may well be set for different types of litigation tasks, and an attorney whose rates are higher than those prevailing in the community may well receive less than his own usual charges." Id.

The fee applicant bears the burden of establishing both the entitlement to a fee award and the reasonableness of the fee claimed. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). This burden is met only by making an appropriate evidentiary showing, and the opposing party does not bear the burden of presenting countervailing evidence of the unreasonableness of a fee application. See Rand-Whitney Containerboard L.P. v. Town of Montville, Civ. No. 3:96CV413 (HBF), 2006 U.S. Dist. LEXIS 75870, at *20 (D. Conn. Sept. 5, 2006).

**A.     The Award Sought by the Plaintiff Would Not Result in a Windfall Even if MP&P Represented her on a Contingency Fee Basis**

The sixth factor set forth in Johnson requires the Court to consider whether the

fee charged to the applicant's client is fixed or contingent.  See 488 F.2d at 718.  The United States Supreme Court has ruled that a contingent fee agreement should not impose an automatic ceiling on an award of attorney's fees.  See Blanchard, 489 U.S. at 93.  Similarly, the Second Circuit has held that "[a]lthough the existence of a contingency contract is not sufficient reason to deny an award under [the statute], the civil rights statutes should not be construed to provide windfall recoveries for successful attorneys.  This Court has the power to formulate a fee award designed to avoid such an extreme result."  Wheatley v. Ford, 679 F.2d 1037, 1041 (2d Cir. 1982) (internal citations omitted).  The Second Circuit in Wheatley went on to hold that, "to the extent counsel receives payment of the [statutory award], his claim for services rendered under his contingency fee arrangement with his client shall be deemed paid and satisfied."  Id.  Thus, an attorney who represents a client on a contingency basis is not entitled to a windfall of collecting both the contingency fee and the court-awarded attorney's fee.  The Court must therefore consider all of the Johnson factors in conducting the two-step process of evaluating a fee request to determine whether it is reasonable.

The Defendant concedes that while the Court is required by Johnson to consider whether the fee arrangement is fixed or contingent, the ultimate question is whether the fee sought is unreasonable.  See Blanchard, 489 U.S. at 91-92, 94-95.  The presumptively reasonable rate method is the starting point in the reasonableness determination even when it results in a higher fee than the contingency fee would have afforded.  See City of Burlington v. Dague, 505 U.S. 557, 566 (1992).  Courts must

focus their equitable analysis on the determination of a reasonable hourly rate that a "paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). In Arbor Hill, the Second Circuit further stated:

> Our decision today in no way suggests that attorneys from non-profit organizations or attorneys from private law firms engaged in pro bono work are excluded from the usual approach to determining attorneys' fees. The reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization, see Blum v. Stenson, 465 U.S. 886, 894, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."), nor is the award necessarily limited because the attorney has agreed to undertake the case for a reduced fee compared to the customary market rate, see Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 233 (2d Cir.2006).

Id. at 184 n.2.

The Second Circuit has also noted that "[i]mportant public policy considerations dictate that we should not punish an 'under-charging' civil rights attorney." Reiter, 457 F.3d at 323. Courts "must avoid [.] . . . decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return." Id. (quoting Blum, 465 U.S. at 895). Even in a case where an attorney agreed to represent a client on a contingency fee basis, the presumptively reasonable rate method is the starting point in the reasonableness determination even when it results in a higher fee than the contingency fee would have afforded. See Arbor Hill, 522 F.3d at 190; Dague, 505 U.S. at 566.

The Defendant's reliance on Wheatley v. Ford is misplaced. First, there was actually a contingency fee arrangement in that case and the Court was privy to its terms. 679 F.2d at 1041. Here there is no agreement on the record, yet the Defendant asks the Court to conjure its terms for purposes of conducting its requisite qualitative analysis. Further, in Wheatley, the contingency fee was 40% of the judgment plus a $10,000 bonus. Id. at 1040-41. The Second Circuit did not cap the fee award on the basis that there was a contingency fee arrangement, but rather on a qualitative analysis in which it concluded that a bonus over and above that fee was unwarranted. Specifically, the Court said it could not uphold the $10,000 bonus awarded by the district court because the legal and factual issues involved were not inordinately complex, there were no serious injuries thereby precluding the possibility of a substantial verdict, and there was little likelihood that plaintiff would be defeated on the issue of liability. Id.

The cases are also distinguishable on the basis of the ratio of the fee sought to the results achieved. The amount awarded was approximately 53% of the judgment. Here the Plaintiff's counsel seeks total fees of approximately $233,000. Assuming a judgment of $520,000, the total fee award would be 44.8% of the judgment, a percentage which diminishes with each day interest continues to accrue. This percentage is smaller than the percentage recovered in Wheatley and yet the instant case was far more complicated and the outcome more uncertain than the Wheatley case.

The fee sought is also defensible based on the hours worked and the work done

on the case. Plaintiff's counsel billed 138.8 hours in total and wrote-off 39.3 hours of work done on the case. Given the complexity and scope of the appellate issues, the time spent and skill and experience needed, as well as the results achieved, the fee sought is reasonable, except as provided below.

B.   The Plaintiff's Post-Judgment and Appellate Attorney's Fees Should Be Reduced Because Some of the Fees Charged are not Reasonable

The Defendant next argues that the fee is excessive because Valerie Willoughby and Sharon Sinkoski, paralegals at MP&P, billed for time spent e-filing and photocopying, administrative work for which the firm charged $180.00. See Kahill v. The Original Old Homestead Rest., Inc., No. 07 Civ. 695 (RJH)(THK), 2009 U.S. Dist. LEXIS 91412, at *13 (S.D.N.Y. Sept. 30, 2009). The Court agrees and reduces the fee award by $180.00.

The Defendant also claims that the fee award should be reduced by $1,750 ($350 x 5 hours) to eliminate the entry of Attorney Parenteau on February 29, 2008, for 5.00 hours spent to "Review file; review cases, draft and revise reply memo regarding attorneys' fees", because Valerie Willoughby filed the reply memorandum one day earlier on February 28, 2008. Therefore, the Defendant argues that Attorney Parenteau simply could not have revised the motion since it had already been filed. In her Reply, the Plaintiff established that the date of the billing entry was a scrivener's error; therefore the award will not be reduced for this reason.

The Defendant also contests the time spent on the fact section of the Plaintiff's

brief, arguing that it was excessive. Given the form and scope of the Defendant's appeal, the length of the trial transcript and the time that elapsed between the trial and the appeal, the Court disagrees and finds that the amount of time spent was reasonable.

The Defendant next argues that the fee award should be reduced by at least $2,800 for research which was unnecessarily performed by Attorney Parenteau on January 9, January 20, February 25, March 2, March 5, March 7, and September 11, 2009. The reason given is that the legal research in this case was previously performed by an associate, Kate Demitrus. The claim that the research was duplicative is unsupported and soundly refuted. However, no reason is given for not having the research done by an associate rather than a partner. In light of the fact that research had previously been done by an MP&P associate, the fee award is reduced by $100.00 per hour, the difference between the partner and the associate billing rate.

Finally, the Defendant argues that the fee award should be reduced by $2,100 for Attorney Parenteau's travel time. Specifically, the Defendant challenges the Plaintiff's right to recover the fees charged by her counsel for the time spent traveling from New London to New York on September 14, 2009 to argue the appeal and the time spent traveling to the courthouse and back to New London from New York on September 15, 2009. The billing records reflect a charge of 6 hours for each of those days, but does not specify the amount of time actually spent traveling. The Court takes judicial notice of the fact that travel time from New London, Connecticut to New York City is approximately 136 minutes.

The Defendant contends that there is currently a rule in this district that travel time is only compensable at a rate of fifty percent of the normal hourly rate. That contention is made in reliance on Rand-Whitney Containerboard L.P. v. Town of Montville, 2006 U.S. Dist. LEXIS 7580. However, there is no universal rule limiting recovery for travel time to a percentage of an attorney's hourly rate in this district. Instead, district judges apply the Johnson factors to determine a reasonable award for travel time as they do all other aspects of the fee sought. See, e.g., Rose v. Heintz, 671 F. Supp. 901, 903 (D. Conn. 1987) (awarding 100% of an attorney's time spent traveling because the request was modest, and the representation so able and successful, that it would "denigrate the judicial process to expend public funds on a further quibble over this amount to which she is so clearly entitled"); Gonzalez v. Town of Stratford, 830 F. Supp. 111, 115 (D. Conn. 1992) (reimbursing travel at usual hourly rate because counsel worked on case while traveling, and because attorneys incur "an opportunity cost that is equal to the fee [they] would have charged that or another client if [they] had not been traveling.") (internal citation and quotation marks omitted); Broadnax v. City of New Haven, Nos. 3:98CV807 (WWE), 3:02CV123 (WWE), 2004 WL 491079, at *1 (D. Conn. Mar. 3, 2004) (awarding 12 hours travel time to and from trial and noting that "[a]ttorney travel time may be billed at 100% of the hourly rate when the hours are few, and the representation is able and successful"); McInnis v. Town of Weston, 458 F. Supp. 2d 7, 21 (D. Conn. 2006) ("Courts in this district tend to award 100% compensation of travel time for trial, especially if counsel work on the case while traveling and if counsel obtain a successful outcome."). As noted above,

**11**

the travel time in this case was brief, less than 3 of the 138 hours charged or less than 3% of the total.  It was necessary as opposed to discretionary as the Defendant appealed the case and the argument was scheduled to occur in New York City, the attorney was precluded from performing work for other clients while traveling, the effort was successful and therefore of unquestionable value to the client, and this is the type of case in which Congress has determined that counsel should be compensated in furtherance of the societal objective of promoting meritocracy, that is, a discrimination free workplace.  Applying the <u>Johnson</u> factors, the Court finds that the fee charged for travel was reasonable and therefore awards attorney's fees for the time spent traveling to argue the appeal filed by the losing party.

C.    <u>Costs</u>

The Plaintiff filed a Renewed Motion for Taxable Costs in which the Plaintiff sought reimbursement from Total for $4,579.10 in costs.  The costs requested are for "photocopying by counsel's office" and are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." <u>Reichman v. Bonsignore, Brignati & Mazzotta, P.C.</u>, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks omitted).  The Defendant's Response lodges no specific objection to the Plaintiff's request for costs and therefore costs are awarded in the amount requested absent objection.

**12**

**D.**     <u>Attorney's Fees for Time Spend Responding to the Objection</u>

Finally, in her Reply, the Plaintiff seeks compensation for the 6 additional hours spent responding to the Defendant's Objection to the Motion. The Plaintiff's request is granted.

### III.  <u>CONCLUSION</u>

It is hereby therefore ORDERED that the Plaintiff's Motion is GRANTED, except that the award is reduced by $180.00 for administrative work charged and by $100.00 for each hour of research performed by Attorney Parenteau in connection with the appeal for a total of $2,800.00, and is increased by $2,100.00 for the 6 hours of time spent by Attorney Parenteau to respond to the Objection to the Motion. Accordingly, the Plaintiff is awarded $55,855.00 in attorney's fees incurred post judgment and on appeal, and is further awarded $4,579.10 in costs.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  May 18, 2010.